to head back to their classroom or wherever they're going next. We'll call the first case of the day, 19-6-0-0-6-3, Jeffrey Butts v. Rosemary Altman. Ms. Bailey? May it please the Court, my name is Shanae Bailey, and I'm here this afternoon on behalf of the appellants, who are actually the private plaintiffs who were parties to the complaints that were filed. Of course, the Montgomery County School District was abolished, effective July 1, 2018, pursuant to the statute at issue here, which is Mississippi Code, annotated 37-7-104.4. It is our position that that statute is unconstitutional for three basic reasons, the first being the composition of the interim board, the second being the composition of the permanent board, and the third being the mandate that the Montgomery County School District be abolished, and the interpretation that came from that mandate, which was that Dr. Carey Wright, the state superintendent of education, by letter directed that all of the employees of the Montgomery County School District be terminated. That same mandate was not required for Winona. Sometimes it helps with a limited amount of time to cut some issues out, and you didn't file a reply brief. That's correct. So, therefore, there are several points that I'd like you to answer that the Attorney General asserted. There is no voting rights argument pending before us, correct? That is correct. And this case doesn't implicate any desegregation order? That's correct. Okay, and you also, both orally and in writing in district court, disclaimed that the classification Mississippi made was one based on race. You disclaimed that? I did do that. Yes. Okay, two other quick questions just to clean it down to your argument. In your brief, you assert that the right to an education is a fundamental right triggering strict scrutiny. You didn't give a case. They point out that you didn't give a case. Do you have one now for us on that proposition? I do not have a case. And the last thing was, when you made the argument about the non-renewal of the teachers, you cited Sindeman. Sindeman? Yes. I look at that as a due process case. Your argument before us is an equal protection one. Do you have an equal protection case related to the non-renewal of the teachers? I do not. Okay. Go ahead with your argument. Thank you. From the outstart, I want to be clear that the private plaintiffs, neither the private plaintiffs nor Montgomery County School District, when it did exist, were opposed to consolidation. It is the manner in which the consolidation was effected. As a matter of fact, I represented, I'm actually a native of Winona. I graduated from Winona Municipal Separate School District, salutatorian, in 1992. And I actually represented, after I graduated from law school, moved back to Winona, and that's when I began representing the Montgomery County School District. So you lived within the city limits? I did, for some time. Wouldn't your argument be better defending someone like you within Winona? In other words, when I look at the equal protection issue here, aren't the Winona residents the one that lack any vote, as distinct from the Montgomery County residents that at least get to vote for two? Well, that's a very good point. And I think that in and of itself, if you look at my argument, triggers strict scrutiny. If you look at Dunn versus Blumstein, I believe that's the case that I cited, at any point where, because we're on the permanent board now, at any point where the right to vote is granted to some, but not to others, then that is a scenario where the courts are bound to look at it with strict scrutiny. But you don't represent, or pardon me if I'm misunderstanding, do you represent any residents of Winona? No, I do not. No, I do not. Only Montgomery County outside of Winona? I represent, the private plaintiffs are parents of children who attended the former Montgomery County School District, former employees, administrators of the former Montgomery County School District. I think Judge Higginson's point is, if there is a right to vote problem, it's for those who don't have any right to vote at all.  They have a right to vote, but if, my argument is that that vote is still, in and of itself, inadequate. As we look at the way this statute is set up, with the three members who are appointed, and I know that Judge Biggers was like, I'm not looking at percentages, I don't want to see any of that, because this is basically an appointed school board. However, if you take that scenario, the legislature can always manipulate the system by, at any point taking- Well, if that's your word, manipulate, the Supreme Court might have said they can always experiment. At this level of locality, Judge Biggers didn't invent the phrase, basically appointed. He took that from the Supreme Court. So I guess, doesn't this case reduce to whether or not Saylor's is a distinguishable case? Because the Supreme Court in Saylor's said you don't apply strict scrutiny to entities that are basically appointed. And that's where we have to make that distinction, because Saylor's- Let me phrase that as a question. Do you know of any court anywhere that has ever applied strict scrutiny to a governmental unit that has appointed and elected officials? Do you have any case where they've done what you're asking us to do? I have not. I don't know of any case. The point that I'm trying to make here, though, is when you have this appointed board, that although we don't want to look at percentages, it's impossible not to look at the fact that Montgomery County, the residents outside of Montgomery County, are 57% of the population of the entire county. They get a direct voice on that board, but the Winona people get no direct voice. Yes, sir. And with that 57%, that leaves 43% over here, only two people are selected via election. That leaves another 43% over here who obviously are having residents, having their representation appointed. What if we have a board where the legislature says, okay, we're going to allow the county residents who comprise 80% of the population to select two people and the remaining people in the city limits, you get to a 0.3. Well, I think- If you look at the scenario- Attorney General's answer, we'll hear from her, would be if it implicates race, you may still get strict scrutiny. If the state creates an entity that's majority elected, then they are obligated to follow Cramer and Reynolds. And lastly, even when they don't, so your situation, they still have to come up with a rational basis to explain the geographic distinction. So I thought probably confined by precedent, where you'd go would be telling us this was an irrational classification. It absolutely is. There is no question. But Judge Biggers did point to things. He said, number one, the school that was allowed to have more Winona was a larger school, 1,300 students versus 200, 300. And it actually had been performing better. And maybe Mississippi didn't want to have a special election. So he gave those sort of three or four reasons as ones that are at least rational. There was no reason why, and this goes to, and I want to quote this because it's so relevant to the point as to what is the impetus for all of this? Why is this school district so different? Why do they have an interim board? No other school districts have interim boards. Why do they have, why are they the ones who have this quirky, appointive system that they're trying out for the first time? Those are critical questions. Exactly. And he answers it here. There's an article, and it's in a companion case that deals with the desegregation. But Mike Kent, who was the facilitator that we dealt with on a day-to-day basis during the consolidation process, he's an employee of MDE, Mississippi Department of Education. Before you read anything to us, is this something that you cited so opposing counsel has had the opportunity to look at it? It is not cited in my brief. However, it's cited in the companion case. That's not particularly helpful to us or opposing counsel, but go ahead and read it. Thank you so much. That six-month period before a joint board is established will likely receive backlash. This is what Mike Kent says, and he understands the frustrations of the Montgomery County School District. Typically, new districts governing, which means new school districts governing, is set up first with an election, and everyone is put in place when the district is consolidated. This one is different. This one basically places power of the consolidation in the hands of the Winona School District. This interim board is purely appointed, right? I'm sorry? The interim that you're complaining about is all appointed? It's purely appointed. Why isn't this your weakest argument? The interim board? Yes. I don't believe it is, because I believe there is a case on point that states specifically — let me find it. Give me just a moment. What? There is a Fifth Circuit Court of Appeals case that states, appointed school boards — it's SARC, S-E-A-R-C-Y v. Williams, 656 F. 2nd, 1003. Counsel, was this in your brief? It is not. Maybe you answer the question my colleague asked about a case. Yeah, so the Supreme Court twice, in Saylors and I think even more emphatically in Hadley, makes clear if it's purely appointed, that's fine. There's no one-man, one-vote doctrine, because there's no theory of representation, there's no voting at all. It's purely appointed. So if you're saying your strongest case is against the interim board, that's not a terribly strong case. You'd have to overrule Hadley. And the only reason why I wanted to point this case out is because it touches on your point. And it states that appointed school board systems are permissible. We all know that under the Constitution. So long as the appointments are not in a manner that systematically excludes an element of the population from consideration. I assume that's a reference to race, which you've disavowed as a theory here. That case is about race, but that goes across many courts. But you said this is not a race claim. That case is about race, but that goes across many instances. It's not just about race. Not according to Hadley. I'm sorry? Not according to the Supreme Court. The Supreme Court said that assuming that it's race-neutral and not race-motivated, as long as it's not that, then you can set up an appointive structure and the state has no constitutional violation. Okay. So I think you're running into a Hadley problem. And I didn't read it like that. That was not my interpretation. I understand that that's your interpretation. Well, let me just read it. We have also held that where a state chooses to select members by appointment rather than election, and that choice does not itself offend the Constitution, namely racial issues, the fact that each official does not represent the same number of people does not deny these people equal protection. So, I mean, you may be right, but I think you have to go to the Supreme Court to get relief. Yes. Well, my point exactly is that when you systematically exclude an element of the population, and they're talking about race, but this statute systematically has excluded every person who lives outside of the city limits from participating in any form or fashion on the school board or in any — I think I understand your theory. It's that — Sure. It's that essentially your theory is the minority of the entire county, namely the city. That's less than 50 percent. They have claimed majority power, right? They have majority power because they get three out of the five seats. What I'm telling you is Hadley allows this. It may be wrong, but it's not something that we can do anything about until Hadley's overturned. So I'm trying to understand how you reconcile Hadley. So we're going back and forth between the interim board and the permanent board, because just a second ago we were talking about wholly appointed boards, and that's where I was discussing the systematic exclusion. And that's the case that I believe, the SCARC case, I believe it's directly on point in that the interim board excluded everyone outside of the county, and that the harmful — Isn't the interim board gone? It is. It is gone. Isn't this moot? I don't think so. And I say that for this reason. The policies that were adopted, the superintendent that was hired, the structure that was set up by that interim board is all still in effect. Day to day, they are operating on the system that that interim board provided, including closing the school, both of the schools in the county. The permanent board ratified the decisions made by the interim board. Is that — that's it? And so therefore it's an ongoing violation? That's your argument? I'm not — I don't know. I don't have any board minute meetings to say that the permanent board ratified it. Those schools were closed. It's my understanding that the school may have even been sold. I know it was up for auction at some point, the county schools. But it's my position that those harmful effects are ongoing. And even if there is no remedy, there has to be a statement saying this is unconstitutional. Does the record explain why Judge Brown didn't rule on your motions at the critical time when the interim board was making the hiring decisions and budget decisions? It does not. And there are — Why did she — what does the record say is the reason she transferred the case? The record just says due to — oh, I'm sorry. That's all right. Judicial economy, I believe that was, and it was a one-liner. And after repeated requests, even filing a motion for oral arguments, we were never able to get any traction. I knew of no other options at that point. Once you had a hearing in front of Judge Biggers at that point, the permanent board was already in place? No. The permanent board was not in place. That was last December. They had about less than a month remaining. I see. Thank you. You still have rebuttal time. Thank you. May it please the Court, Chrissy Noble for all of the state officials in their official capacity. This case actually presents a narrow issue. Can you speak up just so the students can hear you as well as we can? Yes. Okay. This case actually presents a narrow issue, and that's whether plaintiffs may demonstrate a one-person, one-vote claim by comparing three appointed positions to two elected ones on a hybrid school board that was structured after two school districts in Mississippi were consolidated. The district court correctly answered that question in the negative. And before I get to the two independent reasons why the district court should be affirmed, I'd like to make three points at the outset. First, as this Court noted, plaintiffs have expressly disavowed any race-based claim. I also want to go ahead and address Searcy, which was not cited in Plaintiff's brief. But that case actually does reiterate Saylor's and the appointed board concept. Also, Searcy was a discriminatory application case. While I don't have that before me, because plaintiffs didn't cite it, if I'm not mistaken, it relies on the 1886 case of Yick Woe. Second, there is no claim before this Court today that plaintiffs' votes in the elections before them for the two elected positions on the school board have been weighed unequally or treated any differently than any— Let's say, hypothetically, all five seats were subject to election. Would you acknowledge that there's a one-vote, one-man, one-vote problem in that hypothetical? At that point, I think we would be straight up into the realm of Hadley. And I would have to look at the numbers at that point, because Hadley had different districts for the— No, I'm saying in this case, instead of two elected and three appointed, let's say it had been all five elected. I'm just assuming you would concede that that would be a one-person, one-vote problem. I think your point is that it's not that. This is appointed, or it's blended. Yes, but I wanted to make sure, under your hypothetical, that you were saying the three appointed came—or the three elected at that point would still be coming from the city, as opposed to drawing on new lines. Yes, yes. I'm sorry. Yeah. Take the two as is, and the three, instead of those three being appointed by the aldermen of Wynona, it's elected by some districting of the city of Wynona. I think— Then you'd have the problem of a minority of the population exercising a majority of the seats. Yes. I think— So that would be a problem. Yes. I think I agree with that. I would have to look at the numbers. I mean— But that's essentially the Cunningham District Court opinion, which you embraced in your brief. That is part of the Cunningham opinion. Cunningham was a majority-elected board, but it had appointed members, and the point of Cunningham is that the court did not apply one person, one vote to the appointed members. So that is what we embraced about Cunningham in our brief. But yes, I agree with Your Honor that if we're talking about an entirely elected board, we are at that point into Hadley with the different districts for the junior college. Was there a concern, then, that this is essentially a roadmap to governments evading one person, one vote? No. Here's why. Well, there's two arguments here. One is that what Cunningham indicates, at least, is that if you have a majority-appointed board, basically an appointed system, one person, one vote doesn't apply. That's actually a broader holding, I think, for this court, but the court doesn't have to reach it, and here's why. Even if one person, one vote is implicated here, plaintiff's claim fails. So this court actually doesn't have to decide whether or not a majority-appointed board is basically an appointed system, right, because at— Why does it fail? Here's why. Because at most, one person, one vote applies to elected positions, that is, to votes. And there is no claim before this court today that plaintiffs' votes in the election before Cunningham for the two elected positions have been weighed unequally at all. Now, let me be clear about that. Plaintiffs have a Voting Rights Act claim against a locality's implementation of the statute, and that's against Montgomery County. This case is before the court on a Rule 54— But I thought you were conceding earlier that if all these seats had been elected, then you would have a one-person, one-vote problem because you've got the city's, you know, less than 50 percent population getting more than 50 percent of the seats. It seems like a classic Baker v. Carr, Reynolds v. Sims problem. Yes. So let me break that out a little bit. Here we have two elected. In those two elected positions from the county, that's where the franchise has been granted. There is no claim before this court today that the plaintiffs' votes in the election before them have been weighed unequally. Right. Those two seats, they're 50-50 as to the rest of the county. And the state and the other defendants. I'm still wrestling with my hypothetical, which is if you're stipulating, as I think you are, and as I think you probably should, that all five are elected, then you've got a Reynolds v. Sims problem. If you're stipulating that, then why is this not a roadmap for the state to say, oh, great, I can violate one-person, one-vote, I just have to switch from elected to appointed? Because appointed positions do—entirely appointed board or any appointed position does not implicate one-person, one-vote. Right. You're not circumventing it. The doctrine is just not triggered. What's the best circuit decision that's actually said with a local entity that has some members that are elected, it's still basically appointed in Saylor's controls? What circuit has actually yet said that? Circuit court, none of them. We have to say that for you to prevail? No. But that is an alternative basis. But you do not have to say that. Because if you look at the two elected positions on the board, and one-person, one-vote only applies to elected positions. There's no claim before this court that plaintiffs' votes, the Montgomery citizens' plaintiffs' votes in the election before them have been weighed unequally. So let me— They tend to be themselves? Correct. Is—but there is a Section 2 case still pending comparing the two, not a—not—is that fair? Is that correct? That is correct. Not against the state, though, because the state doesn't draw the lines. Montgomery County Board of Supervisors does. So this is on a Rule 54b judgment. So you don't actually have to say what Cunningham said for the state to win. There's just two independent grounds for dismissal. And I mean— And your answer to the blueprint problem, which is we would be writing a blueprint for states to say, well, after all, we can grant the franchise selectively to residents based on where they live, provided we make sure that the aldermen get to appoint a bare majority. Is that—that's just a reality post-Salers, or— I think you would say it more—more with Salers, right, because Salers is entirely appointed. You could say the exact same thing about Salers, except more so that the franchise can be—it can't be—you don't have to grant it at all, because there is no fundamental right to an elected school board, let alone to a fully elected school board. But—and the critical premise behind that is that appointed officials aren't really—it's apples and oranges as to elected ones? Yeah, I think one case called it plums to pomegranates, but— Plums to pome—I saw that. Close enough. But—but—but—and this is—and I've heard you argue before, so you'll be happy to go here. It—it is—to me, if the direction of a lot of constitutional vibrancy right now is to say that appointed individuals are one and—are indistinguishable from elected ones, there can be no limit on how easily removed there are, is it a fair concept to say that appointed people cannot be compared to elected people? Yes, because you would have to give a voter a punitive fictional vote, and it would be either the state legislature, the governor, or this court giving— Well, they're voting for the alderman, who then picks the person who's on the school board. That is true, but it's also a little bit even more disconnected from that, because you vote for your alderman, but then your alderman doesn't—your alderman doesn't go and select someone, then it becomes a collective body decision at that point. So all— You're saying it's sort of a mess to try to impute these appointees to a particular set of voters. Yeah, I—I don't think it's actually possible. You would be creating one of the most legal fictions I could think of by getting—by giving the— I think you made that—the legal fiction. Put aside the legal fiction. Let's just deal with the record and what discomforts me here. The interim board steps in, and the interim board is composed exclusively of the Winona state residents appointed officials. They're the ones that, at least as alleged, choose to fire all the teachers, or the majority, that's the allegation, and hire just the Winona teachers, and arguably, allegedly neglect the students. They're the ones that make all those decisions. What's the limiting principle? Let me clarify one point of the record. On page 785 of the record, plaintiffs conceded why the district—why the employees were not terminated but non-renewed, because the school district was abolished, and that some of them had been hired. With that, the limiting principle being consolidation of school district alone has a rational basis. Consolidation does, but what's the rational basis for making subsequent rehires without regard to qualification? And I say that because in your brief, I didn't see any reference to the record that the rehiring or the continuing hiring of just the Winona teachers was based on an assessment of qualifications. The state nor the statute hires teachers, so that would be the locality's prerogative. So for the classification in the statute, we're talking about the classification of two school districts. Yes, but so your answer is the interim board that was consisted of only appointed bishops from Winona, their decision to hire only Winona teachers is just not something the state can answer for. Well, 785 of the record disputes that factually, but— Well, 785 describes what I think I heard you just say, which is some were hired. That's correct. But let me go directly to the interim board. The interim board majority appointed one person, one vote doesn't apply, so yes, there is a rational basis for it. The district court found it. There are two other issues. That is moot— Well, there's a rational basis for choosing not to have a special election. I'm asking you, is there a rational basis for having favored only the Winona teachers over the Montgomery County teachers? Well, I don't think plaintiffs ever proffered any proof of that, and plaintiffs conceded the oral argument that there were no factual disputes, but again, the statute, we're here on a constitutional challenge to a statute, doesn't classify teachers. It classifies school districts, and that's my rational basis, but I also want to get back to another point of your honors in questioning counsel opposite, and that's that this isn't just moot. First, plaintiffs seek prospective relief. That's moot. If plaintiffs are now seeking any type of retrospective relief against state officials, that is barred by Edelman and its progeny. There's also a rational basis for this. The district court found it, and I think the district court was right, but I think at this point where we are in the litigation, you've got a Green v. Mansour problem with prospective relief being moot, retrospective relief being barred by Edelman and its progeny. Let me ask this. Are these hybrid appointed-slash-elected entities common? Yes, and that is my next point. This is nothing unique in Mississippi. First of all, you can see this across the nation as far as the difference between appointed and elected, and I'll get to the hybrid in a second, but I want to make clear that that's not unique at all. You can see it in Nixon. You can see it in Moore. You can see it in Phillips. You can see it in Snyder. All of those talk about this. 37-7203 of the Mississippi Code, which is cited in our brief, will show you just this. This is a structure that the Mississippi legislature has been familiar with for about 202 years at this point, with appointed boards for the city, for the municipalities, elected boards for the county. I'm talking about a hybrid board. Yes, and that's where I'm going. So consolidation statutes, there are other consolidated entities that have this same kind of hybrid board, but instead of bringing those extrajudicial things into the record, I'll just point you to the statute itself, because it talks about added territory, school districts, and basically what that means is a municipal school district that is educating students outside of the city that are in the county. In those instances, which you can see from the language of the statute itself, in every single one of those instances, you have a hybrid board. And is that because of a history of consolidation? I think I heard you say it's in a consolidation fact pattern. It's actually separate. It is a consolidation fact pattern, but it's also another historical fact pattern of Mississippi where rural counties would enter into agreements with municipal school districts, and they become like separate. One had a tradition of appointed, one had a tradition of elected. You want to consolidate, and so you give each their historical legacy. Yes. So if you get... Much like what happened here, as I understand it. Yes. And I see I'm running out of time. But if you look at 37... And the ratio? Was the ratio the same? 3-2? That's where I'm going next, actually. If you look at that statute, it's actually either majority appointed 4-1, or depending on the county population, it's majority appointed 3-2. That is a structure Mississippi has been familiar with and comfortable with for a long time. The last point I want to... Let me ask you a question that I think may help you. Let's say you had wanted to do all five of these seats appointed. Could you have done that? Are there officials in non-Winona Montgomery that could have had this appointment power? I do think with the experimentation, like I think, let me say this and I'm going to answer your question. But I do think like the Sixth Circuit put it really well when it said that state legislatures need the freedom to experiment to advance public education, and that need to experiment alone is a rational basis. Yes. So they certainly could have. But... Would they have given the appointment power too? I hypothetically cannot answer that. I think Saylor says you could do it for the governor, you could do it for the legislature. They could have made the interim board the permanent board. I think under a rational basis review, absolutely. But Mississippi is familiar with and aware of this structure working. And they did not want to change the structure of appointed and elected. And when you consolidate school districts, you consolidate boards. And that's a complicated balance to do just that. And if I may end by saying this, this is rational basis review, and it is the opponent's burden to negate every conceivable rational basis. I'll give you two cases for that. Glass v. Paxton, Judge Ho, you were on that panel, as well as Duarte v. City of Louisville. Judge Higginson, you were on that panel. Rational basis review, opponent's duty to negate every single rational basis of the law. And recognize this, I'll say this too about voting. Plaintiffs have equated voting in this case to input on the board. But Judge Higginson, as you noted, you cannot say from the 3-2 structure that the citizens in the City of Winona have more input on the board because they get no direct input on the board at all. I'm finished, but let me ask you just two other questions. Do you have any understanding from the record why Judge Brown held this case during that critical interim period? Your Honor, I don't want to speculate. I will say that because there were some desegregation order issues floating around, Judge Biggers had exclusive jurisdiction over the desegregation order. I would be speculating when I say that. The other question is just because of the answer you were giving, does Mississippi have any of these blended boards where the majority is elected? Not that I'm aware of. And if they were to or do, you aren't quite firmly answering whether you think that pulls them into the sailors' world strict scrutiny in Reynolds or you're acknowledging that majority elected would take us out of the world of basically appointed. Well, let me frame it this way. If you had three members on the board that were elected and two that were appointed, I will concede that you could apply Reynolds to the elected positions, to the elected positions only. And let me, I think Your Honor asked me about a best case. Let me tweak your question a little bit and say it this way. I'm aware of no case anywhere that has found a one-person, one-vote violation by comparing appointed positions to elected ones or applying one-person, one-vote to unappointed position. So in that respect, I would reiterate my request for affirmance. Thank you, Counsel. Ms. Bailey, you have five minutes. Oh, we have split time. Yes. Excuse me. Good afternoon, Your Honor. I'm John Hooks of Adams and Reese and I'll be happy to defer my time, half the school district back to the state if you have additional questions. The school district, Your Honor, in some respects I come representing a ghost of Christmas past and that is representing the former municipal separate school district. As the court correctly pointed out a moment ago, neither the interim board nor the current Winona-Montgomery Consolidated School District is before the court, Your Honor. And so as the district court found, the court was without jurisdiction with regard to the actions undertaken by the new Winona-Montgomery Consolidated Board. Even so, as we set out in our brief, Your Honor, the actions undertaken by the new Winona-Montgomery Consolidated Board, Your Honor, are consistent with the statute passed by the state of Mississippi. The district does not undertake in any respect to defend the constitutionality of the statute. That obviously has been very capably done by the Office of the Attorney General today. We would point out, however, that some of the claims made by opposing counsel that the district did not providentially think through some of the actions that it undertook is simply not correct. For example, with regard to extracurricular activities, as we've indicated in our supplement to the brief, the Winona-Montgomery Consolidated School Board and its superintendent tried ardently to enlist the participation of the county superintendent and to get notices out on radio and by other means to encourage participation in extracurricular activities and so on. I'll point out also, Your Honor, in response to the court's question, the district court pointed out that the consolidation statute was passed by the Mississippi legislature back in 2016 and went into effect on July 1, 2016, yet the plaintiffs did not file their lawsuit claiming the need for the emergency injunctive relief until approximately one year and four months later on November 17, 2017. So there was quite a lapse in time indicating to the district court, correctly I think, that there wasn't the sense of urgency or emergency claim by opposing counsel and her clients. There's no further questions, Your Honor. That will conclude my presentation on behalf of the school district itself. Thank you, Your Honor. I would like to begin by going first to the portion of the statute. I believe Counsel Opposite incorrectly stated that I conceded some fact regarding the abolishment of the Montgomery County School District and what that means, but this is actually in subsection 4A of the statute itself where it abolishes the Montgomery County School District. Of course, there is no corresponding paragraph that also abolishes the Winona School District. Jim Mike Kent, the same facilitator that I talked to you about before who I quoted from the newspaper article, he was the one who interpreted that portion of the statute to mean that all of, because this county school district was being abolished, that all of its employees, teachers, bus drivers, cafeteria workers, everyone had to be non-renewed or terminated. That was his statement. Then we received a letter from the state superintendent of education, Dr. Wright, also telling us this has to be done by a certain date under the threat of immediate consolidation. And that letter was dated March 28th. That letter you did provide to us. I did. It was in the record excerpts and it was also in the record as well. So this was no by happenstance. This was a direct order that came down from the state superintendent of education. Get rid of all these people. We were initially told, and I say we, I mean the school board at a school board meeting by Mr. Kent, that everyone, all teachers in both school districts would be non-renewed and that there would be a look at the criteria for educators, test scores, but of course that never occurred. In looking at the hybrid board and the statute that was cited by council opposite that dealt with added territories and things like that, that is a totally different scenario than the consolidationist here. Those people agreed. That's by agreement. There was no agreement here. This was a statute that was handed down by the legislature. You consolidate. So I think we're talking apples and oranges with that statute that she's talking about, the hybrid 3-2-4-1 and dealing with the populations. None of that applied to this. That would have been a much fairer scenario if that had been applicable here. But we were given no options. And fairness, I don't think she was arguing that. I think she was just responding to our question. Okay. But I did want to make that distinction, that that's apples and oranges. She referred to the Sixth Circuit and it's probably the case you both talked about in your briefs, the mix-in decision. Are you comfortable with that ruling or would you like to try to distinguish it? The mix-in decision, I would have to look back at it. I can't remember it off of the top of my head, I apologize, Your Honor. I just want to close just by saying it's our position that there are ongoing harms that are being suffered by the school district. And this is just touching very briefly on the injunctive relief. And I know that Judge Biggers basically slapped us on the wrist for the timeframe within which the motion for injunctive relief was filed, that there was some delay there. But there was not . . . the district was not sitting back. You were going to the legislature. You were doing everything. We were going to the legislature. We wrote a letter to the Errors and Omissions Committee because, again, Mike Kent told us, oh, this is an error. Write a letter. They obviously didn't mean to write this because this never happens. So that's what we did. We wrote a letter. We waited months to hear back and then we were told, no, this was purposeful. And so then we . . . and I'll be the first to admit, I am not a constitutional lawyer. This is not my place here in federal court. And I thought about trying to obtain co-counsel that could fit within our budget and we could not. So they were left with me. So I'm here today requesting that based on those three issues, the interim board excluding all of the residents of the county, impermissibly so, I think based on the case law that I cited, the makeup of the permanent board and it being, just like Judge Ho said, a roadmap to being able to sidestep the one person, one vote in all circumstances. And I believe under those bases that these statutes should be found unconstitutional. Thank you. Thank you. This case is presented.